So let me just call the roll, as it were, for the first case. That's Yale New Haven Hospital v. Azar. Mr. Overbold, are you there? Yes, Your Honor. Okay, and did I say your name right? Yes, thank you. You can see and hear me and the panelists? Yes. Good, okay. And Mr. Roth? Yes, Mr. Roth is here. Good, okay. So I understand, Mr. Overbold, you wanna have three minutes for rebuttal, which is fine. Let me just tell everybody, we've been doing this now for months, for over a year. It works. We've had very few problems. However, occasionally somebody drops off for one reason or another, don't panic. Just get right back on the line. We'll wait a reasonable period of time. And when you get back on, we'll just resume. If for whatever reason you can't get back on, keep trying. We may move to the next argument if it turns out that it's dragging on for a bit, but we'll then resume. No worries. We've got great technical people standing by who have really made this work beautifully. So I'm not worried a bit, but just those are the running rules in case we run into a glitch, all right? So you've got 10 minutes each, but we'll hear seven minutes from Mr. Overbold to start. You may proceed, Mr. Overbold. Thank you, Your Honor. May it please the court, life overall, on behalf of the appellant, the Secretary of Health and Human Services. This case involves a statutory scheme in which each year before a statutory deadline, HHS must calculate a total amount of money to be distributed to certain eligible hospitals and then to divvy that amount up pro rata based on HHS's estimate of the share of uncompensated care that each of more than 2,000 potentially eligible hospitals provides. That divvying up is done in a zero-sum fashion where a change in any one hospital's estimate will affect the share to be provided to every other hospital. To allow the system to function and to avoid the serious disruption that back-end review of any type would entail, in setting the system up, Congress included an express preclusion of review provision barring review of the estimates HHS uses to calculate these payments. In this case, Yale New Haven seeks to bring a challenge to HHS's estimate of the uncompensated care they would provide for fiscal year 2014 that is barred by the express preclusion of review provision and in any event, meritless. I can address these two bases in either order, but I'll start by discussing the preclusion of review provision. The provision in question 42 USC 1395 WWR3 provides the relevant part that there should be no administrative or judicial review of any estimate of the secretary for purposes of determining the factors used to calculate uncompensated care payments. And I think it's clear here, if you look at the complaint, the procedural claim set out in Yale New Haven's complaint at JA 28, that they are asking that their estimate, that the uncompensated care payment and consequently the estimate on which it's based be set aside based on its asserted procedural invalidity. And on appeal, they haven't meaningfully disputed that the methodology they're challenging, the process by which the methodology is issued and then the estimate results has no independent significance. Could I ask, what cases do you rely on for the proposition that a provision such as this, which precludes judicial review of a substantive matter, the estimate by the secretary also precludes any review of the procedure by which the secretary arrived at the decision? Your Honor, Florida Health articulates the principle particularly neatly that notes where you have a judicial review bar, bar and review of a particular agency action, which here is the estimate you would submit as the action being challenged, that bars a procedural challenge that's only being brought to reverse the individual determination that the court could not otherwise review. The court of appeals didn't really deal with the procedural issue. The district court did. But am I right that- In both Florida Health and DC hospitals, the district courts plainly rejected a procedural challenge, but the court of appeals was silent. Am I right on that? Well, in both those cases, the hospitals there didn't try the precise move that the plaintiff is trying here where they conceded essentially the substantive claims are precluded, but still trying to bring just the sole procedural claim alone. The plaintiffs there in the two DC circuit cases did try to recast their substantive objections as objections to the methodology, to the procedure. And the court of appeals decision, for example, rejected the effort to challenge the procedure merely as an ability to, merely in an effort to challenge the determination the court could not otherwise review. Doesn't this, your understanding of the statute though, in effect, immunizes the secretary from compliance or non-compliance with Medicaid rules with regard to the promulgation of rules affecting Medicare reimbursements, doesn't it? At least in the context, in this particular context, it immunizes the secretary because you're saying that, because it really reaches to the methodology. I appreciate your argument and there's a simplicity and persuasiveness to it, but it in effect immunizes the secretary from compliance with the rules and procedures for the promulgation of, the limitations for the promulgation of rules, doesn't it? So the secretary could just do whatever he or she wants and just promulgate a rule and not even comply in any way, shape or form with the notice of comment. Congress enacts these review bars in sort of particular, in connection with- Why don't you answer my question? Does it effectively immunize the secretary from it? Isn't that what you're arguing? It doesn't immunize. Well, let me ask you this. If you conceded that the notice was inadequate on the procedure, you would still tell us that because this really goes to the methodology and not the compliance with the rule that the prohibition applies? Well, it would be strange if it wouldn't, if the fact that the plaintiff here is bringing the essentially the same challenge as the DCH regional hospital brought in the DC circuit, that if we were to concede in one case, not the other. Why don't you answer my question? Let me ask you a question. If you concede, would you concede, take the fact pattern that the rule was not complied with at all, just take this hypothetical and that it resulted in a methodology that costs some hospitals money. Are you saying that the statute precludes judicial review of that because of the non-compliance with the notice and comment period? Yes, I mean, it precludes challenges- So you are saying it immunizes the secretary from compliance with the notice and comment provisions, right? Well, it doesn't. I mean, the choice Congress has made based on the disruptive- Well, Congress did specifically write the notice and comment period out of the rule, of the prohibition? They didn't. And just, I mean, I see that I'm almost- So, well, I understand, but let me finish with my question. So your interpretation of the statute would give, say that it has no effect whatsoever as to the notice and comment period in this particular area, right? It has no utility. In a situation in which you have a review bar, generally, it reflects a judgment by Congress that rather than judicial review as the mechanism to ensure compliance with an agency, has an independent obligation to comply- Why didn't Congress simply say that the secretary doesn't have to comply with the notice and comment period then? Well, there's no, HHS's position is not that it doesn't have to comply with the notice and comment procedure. The point is that the mechanism- But if it doesn't, it's immunized because this is an odd duck case. And so I'm giving you a hard time, but I mean, seriously, your view is that it's hard to separate the methodology choice to get to the substance of the methodology choice if there's a procedural violation. Is that it? That it. Mr. Arvold, let me ask you a slightly different question. Does the secretary concede that the policy of aggregating or not aggregating merged hospital data is a rule? That the policy- Well, that's what this is really about, right? Whether or not the merged data from St. Raphael should have been considered or whether it's kept out. And so for 2014, it was kept out. And what the hospital is saying is that before that, you always merge these things. If it was a merger, you took the data from both hospitals, combined it, and you put that into the numerator, and that was also made up part of the denominator, and that's how you got your third factor, which was a quotient. And so was that decision to aggregate or not aggregate, is that a rule that would otherwise be subject to the APA or Medicaid? It was a component of the methodology for generating the estimates, which were included in this IPPS rule for 2014, among many other rate setting and other things that that rule did. So it is one component of the methodology that HHS announced in that case. We would submit, I mean, it's not, the methodology announced was actually that each individual hospital would have its estimate and then its payment determined based on its historical cost report data from 2010, 2011, that that's the relevant methodology. And for that reason, because that was announced in the proposed rule, this is obviously moving to the merits a little bit, but because that's announced in the proposed rule, that's all that's required to meet the standard of fairly apprising interested parties of the subject and issues of the rule. Okay, so a change in that methodology would require then a change in the rule, notice, and comment, do you agree? Under the APA and under the Medicare Act? Right. We don't dispute that HHS has to announce the methodology for calculating these payments pursuant to the statutory deadline in a system in which they're announcing those payments among many others every year, in this case for more than 2000 hospitals. All right, so then what you're saying then, or all of them perhaps you're saying is that because nonetheless, although this might be a rule, it still falls in the definition of an estimate, as that term is used in the limitation review provision, that that is a carve out, that in other words, the APA and the Medicare Act can't be considered by us on judicial review. Well, to be clear, that's the only manner in which these estimates are generated and calculated every year. I mean, the DCH regional DC circuit decision came from a hospital participating in the same rulemaking that actually commented on the issue that Yale New Haven is claiming they were not fairly apprised of. They commented on that issue and then brought both rulemaking and substantive challenges in the DC circuit as part of the same methodology announced in this rule. And that's the claims that the DC circuit concluded were barred by the plain terms of this, the conclusion review provision. Did I ask a factual question? I'm sorry. No, no, certainly. I was gonna ask if anybody else had any questions. And you do. A factual question. You told us at the outset that there are 2000 hospitals affected by the rule. How many hospitals have the issue of a merged hospital other than in the fiscal period, 2010, 2011, so that they would be in the same position as Yale New Haven or DC hospital? I am not sure you're on the precise number. DCH regional had the same issue and noted in its comment that it believed other hospitals may have it. I know in the plaintiff's response brief, they said it was a handful of hospital. I do not know the precise number. So is this really, are we talking about a rule of general applicability or something that has an effect on a small number of individual hospitals who had mergers in 2012? Well, given the interlocking way that the estimates work together, vacating the estimates, even for whatever subset of hospitals to which this particular issue applies, that also requires vacating or to comply with the statutory directive that you calculate the total pool of money and then allocate it pro rata. It requires sort of unscrambling the egg. I know that. There's some tension between whether this is a rule of general applicability or what an appropriate remedy is. So I was just trying to understand what the facts are. It is. I just say that just because that does explain the presence of the review bar, I think in this statutory scheme that to grant the remedy being requested here, we're just setting aside a particular estimate and still comply with this requirement to calculate a pool and then divvy it up. You have to vacate everyone else's estimates as well. Well, one other question. I mean, I noticed in the APA, there's an exception to the notice and comment requirement for interpretive rules and rules of agency practice. But you don't seem to be arguing that what we have in front of us here is an interpretive rule or a rule of agency practice. Am I right about that? No, and HHS did go through notice and comment rulemaking to issue this rule. All right, well, you reserved three minutes for rebuttal and you got even more than your money's worth now, but that's okay. We have time and it's an interesting case, but we'll now hear from Mr. Roth for 10 minutes or maybe more. We'll see Mr. Roth, what kind of questions? Thank you, Your Honor. Can I reserve two minutes for rebuttal considering that we're cross appellants here? I don't generally like to go back and forth like that. So we'll make sure you get your money's worth, don't worry. Okay. And if it really cries out for a response, then as the presider, I'll reserve the right to let you back in, but don't count on it. How about that? All right, well, thank you, Your Honor. Robert Roth, Hooper, Lundy, and Bookman on behalf of the Appellee Cross Appellant, Yale New Haven Hospital. Thank you to the panel for allowing me to appear remotely today. The, I am here to answer whatever technical questions you have. I think the panel is aware that, you know, Medicare reimbursement has been a focus of my practice for 33 years, including five with the government. But if there are no questions out of the box, I'd like to address some of the issues that came up in the argument by government counsel. The, first of all, with respect to the applicability of Florida Hospital and the DCH case from DC circuit in the government's brief in chief on page 25 in note three, they note, they concede that Florida Hospital and DCH, quote, did not argue that procedural claims cannot implicate the preclusion of review provision. So Judge Caldwell, to go to the question that you asked, no, there is no circuit conflict here. There would be no, there would be- No, no, no, but the challenge to the procedure was certainly raised in the district court in both Florida Health and DC Hospital and was explicitly dealt with and rejected by both district courts. The cases that went up to the DC circuit, the DC circuit may not have dealt explicitly with the issue, but of necessity in rejecting the objections that were raised by Florida Hospital and DC Hospital required a rejection that there was a procedural flaw that invalidated the application of the rule to those hospitals. There is a difference, Your Honor, between a procedural flaw, which is similar to what was also raised in Amgen to a complete failure of the secretary to engage in rulemaking. That's what we have here. No, no, no, but- Florida Health Sciences- Hold on, I'm sorry. Complete failure to engage in rulemaking? Yes, Your Honor. There was a proposed rule. The final rule in Hague Verba was the same as the proposed rule. There was notice and comment. There was comment by the DC Hospital. The secretary answered that comment in the commentary to the final rule, but the wording of the rule was actually just the same. It wasn't a complete absence of notice and comment. There was a proposed rule. There were tables. Yale could have objected. Yale chose not to. DC Hospital objected and got an answer in the final rule, but the rule was the same. I know you keep saying that there was a complete absence of notice and rulemaking, but there was a proposed rule. There was notice, there was comment, and then there was a final rule, which was exactly the same. As Judge Hall, if you correctly found, there was no notice concerning the merge hospital policy in the proposed rule. And Your Honor, in your RFM decision where you cited Fox Television about a lack of notice, similar situation here. Of course, this was part of an omnibus rulemaking, but there was no notice concerning this longstanding policy that existed before 2014 and existed after 2014. And for this one brief period of time, it didn't exist. And there was no notice about that. Sorry. Go ahead. I didn't mean to interrupt you, Mr. Roth. Go ahead and finish your, I have a question, but I want you to finish your answer if you're just- Yeah, I mean, yeah, there was no notice. And that's particularly seen by the fact that the Hospital of St. Raphael's data was included in the proposed rule and then was absent in the final rule with no explanation. Unlike DCH Hospital, where in DCH, their data from the emerged hospital never even showed up in the proposed rule at all. So they were given some individual notice, but there was never any APA type notice. And of course, as we know from the Alina decision by the Supreme Court, the notice provision and the rulemaking provisions of the Medicare Act exceed what's required by the APA. I'm sorry, Your Honor. No, that's okay. No, no, no, that's okay. This is just a function of the fact of Zoom. It actually happens in real life too, all the time. So let me ask you a question. What's your remedy? Presume that there was a straight up affirm of Judge Hall's opinion. She left the rule in place. You don't like that, I suppose. You'd like to see the rule vacated, but let's presume you went all the way along and we vacated the rule. What next? Well, I think what's next is that the rule goes back whether there's a formal vacature or whether there is simply the order to be vacated. And then the question is, what happens next for the secretary? Is there a redo? Is there a redo? You did the unnoticing comment. You get to comment. And then the secretary makes a decision as to what the rule will be. I personally don't think there'll ever be a redo because I don't think the secretary could ever justify this policy or would ever attempt to justify this policy. Excuse me. If the secretary, wait a second. If the secretary decides that they wanna stick with the rule whether you like it or not, what's the standard of review for the secretary's decision to do that? Or is it not reviewable? Well, it's an interesting question. At that point, candidly, Your Honor, I think we're left with kind of an ultra-virus kind of a thing at that point. There's no judicial review of the methodology that the secretary picks, is there? There's no of the methodology. The secretary says, I decided that I'm gonna use just the Yale New Havens Hospital uncompensated patient figures as opposed to the combination of the merged hospitals. I realized it's a change in the rules, but the difficulty that it would cast in redoing it all over the country and we've all moved on will cause more trouble than it's worth. There's no arbitrary and capricious review. In fact, wouldn't you agree with me that that decision is not reviewable under the statute? Well, like I said, Your Honor, I think that it would be subject to the preclusion statute for sure, right? Because now they would have cured, assuming they cured- So why are you here? Well, because- I just can't understand what the victory is. What do you accomplish? Let me finish. Okay. You know, I've spent a lot of time reading all this stuff and it's well-written. You're a bunch of good lawyers. It's a thoughtful thing. But I think to myself, where does this end up? It ends up back in the secretary's desk and the secretary's already once said, nope, I'm sticking with the rule that I proposed. When the DC hospital objected, said, no, I'm sticking with it. And that was- Yeah, respectfully, Your Honor, they didn't say that. The secretary has never explained and I don't think ever can explain how it could allow a hospital. This is what Judge Katz has just talked about. No, I understand that you don't like the rule. I get there. And it makes perfect sense to me that you don't like it. Right. But my question is remedy because that's what you're here for. And I don't see one. Well, the remedy is that if the secretary, as I think the secretary will do, decides on remand, not to try to reissue this rule because I don't think the secretary will ever be able to state this. This is why the secretary abandoned it. Let me ask you a question. Have you asked the current administration as to whether they might settle this matter and resolve it now? Well, I mean, I think the court knows about our 28-J letter and our efforts of mediation here. And so we're here arguing the case. But the point, Your Honor, is that number one, hospitals, we're subject to these rules every year and the procedure counts. This is a statutory requirement that exceeds what's in the APA. So if for no other reasons, a matter of good governance, notice and comment matters, and the secretary should be held to follow the rules of notice and comment, number one. Number two, if in fact the secretary decides, you know what, I'm just gonna redo it again. We'd be very interested to hear how the secretary does it, and there could be tremendous value to that in many other- And if you don't like the justification, you're stuck with it, aren't you? Well, I think like Florida Hospital and DCH- You're stuck with it, aren't you? You agree with me. You agreed with me a minute ago. You're stuck with it. It's subject to the preclusion. It's subject to the preclusion. We would still have an ultra-virus argument if we thought that would apply, because like here, even if the preclusion does apply, we can always challenge ultra-virus. But at that point, we would no longer have our rulemaking, which was crucial to what we- It was absolutely the only focus of this case, because we didn't appeal Judge Hall's dismissal of the other counts. Okay, all right. Okay, thank you. Counsel, you've tried to distinguish Florida Health and D.C. Hospital. Is there any case that is reasonably on point for your proposition? Judge Hall said it's a difficult question. I didn't see that Judge Hall found another case reasonably directly on point, where there's a preclusion of judicial review as broad as this provision, and yet a court said, well, it doesn't preclude review of the underlying procedure. Yeah, I mean, what's- Just tell me, is there a case that says that? Well, you could check ALINA, the language in ALINA, and the Supreme Court decision in ALINA. In other words, I've been doing this for 33 years, Your Honor, and I've never been in a situation- So good, after 32 years- Right, I've never been in a situation where the secretary has not engaged in rulemaking. So there is no case. There is no case. There is no case. Where the secretary, where faced with a rulemaking, a failure to engage in rulemaking- Hold on, hold on, it's an easy, it's a simple question, right? After all of the briefs, a congressional declaration, no judicial review of the substance, where a court has said that doesn't preclude us from looking at the procedure by which the substance was arrived at. DCH and Florida Health Services did not include this. I'm not aware of another case involving this preclusion statute. I can tell you, Your Honor, that I can give you two examples of statutes that explicitly exclude the secretary from having to use notice and comment rulemaking, right? Okay. Would you like those citations? There were two citations- They really don't answer my question. I understand Congress could have- Right. Could have explicitly precluded a procedural review, but that doesn't answer the question of whether this particular preclusion is sufficiently broad. Let me ask you- Well, I think it does answer the question, because if I could respond- Counsel, can I ask you one other question? I'd like to respond to that one first. Whoa, whoa, Mr. Roth. The only count that survives is count two. Correct, Your Honor. Count two says, the merged hospital policy and the hospital FFY 2014 DSH payment are procedurally unlawful and should be set aside because the payment was calculated using the FFY 2014 merged hospital policy, which the secretary did not adopt properly under the APA and the Medicare Act. Why isn't that a challenge to the payment that the secretary arrived at? Because as Judge Wesley was just... My explanation to Judge Wesley is that the remedy as a result of this count being upheld would not be a recalculation of anything. There may be, if it turns out that the secretary decides not to try to readopt the policy or explicitly rejects the policy. And under those circumstances, then the question is what happens next? And then on those circumstances, it'll be a question for the secretary to see how the secretary wants to handle it that could lead to some other kind of procedural action on our part, but it would not directly lead to payment, which is what Judge Hall found in finding that it was too attenuated not to meet the very high standard of inextricably intertwined. Inextricably intertwined has been the historic standard that's been used through the courts of what's needed when you try to link a preclusion statute to the preclusion of review of a failure to follow the rulemaking requirements, whether in the APA or in the Medicare Act, Your Honor. All right, well, thank you, Mr. Roth. We'll now hear from Mr. Overvalt for three minutes of rebuttal. I think you're muted still, Mr. Overvalt. I apologize, Your Honor. Just to start with one point about what the DC Circuit actually decided in the two cases interpreting the same review bar. This is at page three of our reply brief from the DC Circuit decision in Florida Health. The court stated judicial review is not permitted when a procedure is challenged solely in order to reverse an individual decision that we otherwise cannot review. And there's no way around that principle for the plaintiff here. They said, my colleague said that in this case, they're challenging a complete failure to engage in rulemaking. But in fact, in the rulemaking at issue, DCH Regional raised the precise issue that they argue they were not fairly apprised of. The secretary considered the comments and rejected the request to make an exception to the methodology articulated in the rule for emerged hospitals. It applied the same methodology that was announced for everyone else and rejected the comment. They now argue that if they were given another opportunity to make the same comment, they could then perhaps seek review of any rejection of that comment. That is the precise claim that was raised and rejected DCH Regional, which is essentially the same here. It's just they're arguing they weren't fairly apprised of an issue. DCH clearly was apprised since they commented on it and argued there was a failure to reasonably respond to their comments. But in either case, review was precluded. But one other point I wanted to make is just the statute precludes both judicial and administrative review of these estimates. It's no less disruptive to send this back to the secretary to potentially to consider a step that would require vacating estimates that were used to make payments now over six years ago in a system in which each hospital share is tied to every other hospital share. That is why the review bar precludes both forms of both judicial and administrative review. And so sending it back, the agency doesn't avoid the disruption in any case. In both cases, you have this sort of unscrambling the egg problem. And so that's not sort of get around the bar either. And if court has no further questions, we would ask that the district court judgment remanding this to the secretary be reversed. All right. Well, thank you both. Very well argued and very well briefed, I might add. We will reserve decision.